All right, lawyers stand at your place please and identify yourselves to the record, appellant. I'm Carolyn Gordon, I'm a state law defender. Thank you. Good morning, Your Honor. Assistant State Attorney Joseph Alexander on behalf of the people of the state. Thank you very much. From my own personal point of information, have either one of you argued before here? Yes. Both of you have? Great. Thank you very much. You know the rules then. Okay. All right. Are we ready to go? Counsel? And please rest assured, we've read the briefs, we've read the cases. If you want to get to your main points, that would be a good idea first. And also I mentioned, Justice Hoffman is not here today, but he will, I assure you. Listen to the arguments on tape and he'll be prepared to participate in the ruling. So, counsel, proceed if you would please. Thank you. Good morning, Your Honors. Again, I'm Carolyn Borland for the appellant, Ronald Jackson. As this court is aware, we have raised six issues in the brief, two of which the state has conceded. In the interest of time today, I would like to focus primarily on our ineffective assistance issue, touch a little bit on some of the state's arguments, and if time permits, maybe address issue three regarding our position that the firearm enhancements do not apply to attempted murder of a police officer. Fine. Thank you, counsel. With respect to the ineffective assistance argument, Jackson chose to have his jury consider whether he was guilty only of a lesser included offense. However, in that context, defense counsel failed to present crucial evidence to support that defense and also failed to object when the state elicited evidence and made arguments that urged the jury to convict Jackson of the greater offenses irrationally. Let me ask you first about forfeiture. Sure. These things were not objected to during the trial? No, and that's why we're – Right. One of the state's comments was regarding whether Jackson looked as nice as he did in court on the date of the offense, but every other comment was not objected to. Okay. So as far as forfeiture, and in the – there's a pro se motion by your client, right? And then another motion was brought after that by counsel. Right. What specific objections or arguments are being made that were included in those before us here? Are there some new arguments that have been proposed here? As far as what we're alleging from ineffective assistance? Right. Basically everything. Jackson was mainly focused on why defense counsel did not call fields. He did file a pro se motion to reconsider later where he argued that the court should consider whether if he did fire a gun, he actually had the intent to kill. So he was considering other things. But in terms of counsel, he did not allege specific errors here. And post-trial counsel, she did say the prosecutors engaged in misconduct, but – and she didn't address. So are you arguing everything under plain error, then? Yes, under the theory that courts have decided that if you can prove prejudice from ineffective assistance of counsel, that shows second-pronged plain error as well because you've undermined the judicial system and closely balanced evidence, too. Counsel, one more actual question. Sure. As far as the casings from the bullets that were found in and around the scene, were they all .40 caliber or were there some .45 caliber? I believe they were all .40 caliber, but they could tell they were fired from different firearms. Two guns that were both .40 caliber. I think one was .60 and one was just a regular Smith & Wesson. Right. Both .40s, right? Yeah. And no .45s. I don't think there were. I'm pretty sure they were all .40s. Yeah, I think the briefs define that, so I wanted to get your opinion on that. Yeah. Okay, thank you. All right, continue. So at the close of the State's case, the trial court said, I think there's some question here on whether Jackson and his co-defendant Fields knew that Officer Portis was a police officer. He offered to instruct the jury on lesser offenses of simple attempt murder and simple aggravated discharge. Jackson chose that alternative theory. In that context, the State did present evidence and laid arguments to support its theory that Jackson knew or should have known that Officer Portis was a police officer. It talked about his clothing on the night of offense elicited from Officer Portis. He was in civilian dress, but he had on a bulletproof vest over that. He had a star. He had a badge dangling from his neck, his duty belt. And notably, as I was preparing for oral argument, I reread the opening statements. The State, in opening statement, described Officer Portis' appearance as tactical clothing. So all of that kind of describes he may not have been in uniform, but he was still easily. But isn't there evidence that he had the badge on, like a necklace around his neck, and we've seen officers dressed that way? It's fairly clear, unless the thing is obscured by a jacket, that no one would be walking down the street looking like that unless they were a plainclothes police officer. And that's why I think it became so important to talk about what his general appearance was, because you've got to remember it's 9 p.m. on a cold January night, so it's dark. All of these events happened really quickly. According to Officer Portis, he's at 120th Place in State Street. Jackson and Fields come around the corner about a half block away at 120th and State. Almost immediately, Codefendant Fields starts shooting. Officer Portis immediately runs and ducks behind a car, and he starts returning fire. So if you consider this brief glance, they may not have seen the star. At least Jackson may not have seen the star. So what was the general appearance looking like? So the fact that Codefendant Fields' attorney elicited that he was dressed specifically to blend into this violent neighborhood, he was wearing a gray sweatshirt, gray pants. If you consider only this brief moment in time, he may not have seen that star. So this is the cross-examination that the Field's jury heard, and this jury did not. Just the fact that he had gray and blue, whatever, on, I mean, is that significant? I think it's very significant, and specifically that he was dressed to blend into the neighborhood. Because when I think of non-uniform, I think of plainclothes detectives. And especially when you hear additional evidence, he's screaming out, police, police, police, the whole time. And Fields' attorney also elicited that two other officers, one only a half block away, both before the shooting and during the shooting, and another a block away listening over the radio, neither heard him say police. Then when you're considering just these brief moments in which Jackson had a chance to look at what was going on, I think it's very relevant to know exactly what he was wearing. So the jury doesn't speculate. They can put themselves in his mind. And in that regard, it's also important to remember that when Field's jury heard this evidence, they acquitted him of attempting to murder a police officer and found him guilty only of attempt murder. There was ample moral reason to do so had the jury heard this evidence in Jackson's case. Again, we don't really know what was in the jury's minds in either one of these cases. So what evidence they relied on or didn't rely on? We don't exactly know what they relied on, but we do know what they were presented. And I would point out this court's decision in People v. Goods, which we cited in the brief. It's a 2016 case. There, the defendant merely pointed, he asked the court to take judicial notice of the DOC page that his co-defendant was convicted of second-degree murder and said that's enough to show that when his trial attorney presented that theory, the jury acquitted him and found him guilty of the lesser offense. And he was saying, so that shows you prejudice. Well, the facts in Goods are a lot different than the facts in this case. That had to do with the affirmative defense at all, and this is totally different. It is different, but I think it's useful to show prejudice. When we're considering is there a reasonable probability, we don't know exactly how the jury would have considered the evidence in this case, but we know that when Field's jury heard it, they did find there was some doubt. So I think it is helpful in that regard. And I would point out the cases that the state has cited about how reasonable juries can differ, all of those are cases where the defendant on appeal simply argued, my co-defendant was acquitted, acquit me too. It wasn't asking just to consider reasonable probability. And in this case, where the jury did find, where Field's jury did find reasonable doubt, but Field's new officer, Portis, was a police officer, I think there was so much more reason why Jackson's jury should have made that again. So when Portis said he saw Jackson in Fields, he said Fields was in front of him, in front of Jackson. Jackson was behind him slightly to the right. It was almost immediately when Fields opened fire, immediately when Officer Portis went behind the car and returned fire. So if Jackson did not know, so he did not start shooting until after Officer Portis returned fire. So he had much less time. He may have instinctively been reacting to the fact that his friend immediately opened fire on this individual and that individual returned fire. That only makes sense, though, if the jury knew, if the defense counsel had countered the evidence that he was screaming police, police, police the whole time and that there was reason why he may have looked like someone in the neighborhood. And not only did that evidence support the lesser included offense instruction, it also supported all of the charges in this case. If the jury found reasonable doubt that Jackson knew he was shooting at a police officer, it could consider his mind frame. In this violent neighborhood where his friend's reaction was to start shooting and the other person started shooting back, maybe he only fired to try to get away. Maybe he wasn't trying to kill someone. Maybe he wasn't knowingly discharging his weapon in someone's direction. So his defense was pretty much all or nothing, right? I mean, he was there. He didn't do any shooting. Yes. That's it. So was there any testimony during the crank or any time that the defendant didn't agree with that? Well, the defendant testified he didn't agree with that. He went to field to testify that he was not there at all. But we do know that on the record that Jackson disagreed with that because he chose the alternative theory. He chose the lesser included instructions, I should say. So and then he also, again, we know in his motion to reconsider a verdict that he filed pro se, he was focusing on alternative things. If I was there shooting, the state didn't prove that I had an intent to kill. And we don't dispute that it's counsel's specific theory was, as Your Honor said, he was there but not shooting. We don't dispute that counsel had the right to try to go for and find him innocent. But counsel has a duty to present mitigating evidence of which he is aware, regardless of whether Jackson chose the instruction. What about trial tactics? Isn't that left up to the attorney? It is, except, go ahead. Isn't the problem here, as Justice Conners was just indicating, that if this defendant's attorney had gone into more depth about what the officers were wearing, it would have embellished the record and put more evidence in front of the jury about what our defendant was doing and why he was there and what he would have seen and heard. Yes. And counsel made a strategic decision not to do that, but to do the all or nothing defense instead. But strategic decisions have to be sound. And there are cases that say when counsel is aware of mitigating evidence, he has to present it. And that's even when the defendant has not chosen a lesser included offense. But it's even more imperative. Let me, I know you're sort of saving me for the end. Oh, sure. But this is one of those rare cases where we have a split in authority on the enhancement issue. And I want you to take some time to address that for us. Because on the one hand, we have the Douglas case, which was first chronologically, which says you don't do the enhancement. But then we have two later cases, which appear to be much more detailed. And less dicta-like, which says the enhancement does apply. So why do we go with the original Douglas case rather than the two later cases? I think there's several reasons why. One reason, the plain language supports Douglas. And the parties agree that's the best indicator of legislative intent. Subsection C1 states, attempt to murder is a Class 1 offense carrying a 6 to 30, or Class X offense, I'm sorry, carrying 6 to 30 years unless the following subsections apply. And then attempt to murder of a police officer is in subsection A1, and it goes 20 to 80 years, no mention of a firearm enhancement. It doesn't even say 20 to 80 years unless one of the following firearm enhancements is proved. The firearm enhancements are then in subsection C1B, C, and D, and they stand on equal footing. Interestingly, Douglas was decided in 2007. In 2010, prior to Tolentino and Smith, which were 2011 and 2012, the legislature amended the attempt to murder statute to add a fifth category, which is if the defendant can prove sudden provocation led him to attempt to commit murder, then he's only guilty of a Class 1 felony. At that time, Douglas had been on the books for two and a half to three years. The legislature was presumed to know how Douglas had construed the statute, and it could have easily amended the statute to say, to make it more clear that it intended for the firearm enhancements to apply. Again, the easiest way would just be to add language to it. You've got a little, somewhat difficult burden here, despite the fact you've got a case you can rely on, because it seems fairly clear in general, and I'm talking about the specific statute in C1, the legislature loves firearm enhancements. There's already a 60-year range in subsection C1A when they added the firearm enhancements in 1995, so as Douglas recognized, they could have easily determined the trial court already has wide discretion. If it thinks the firearm enhancement, or the defendant's use of a firearm enhancement was egregious, it can impose a sentence much like, it can add a 20-year enhancement just for use of a firearm. Are you talking about the thought process or the language in Douglas where the court says, well, we think the legislature was probably considering this when they proposed the statute? I mean, is that a good basis for a ruling? I think they began with the plain language of the statute, and then they said, we see no reason to depart from that plain language, because we can't envision a reason why the legislature would have needed to. Can the argument be made that it is not ambiguous, that this is pretty straightforward and doesn't exempt the firearm enhancement? That the firearm enhancement should apply? Right. I don't think so. I think the only way that you can do that is you say the defendant qualifies under both, so he gets both, but if that's the case, then someone who was armed, personally discharged, and proximately caused bodily harm would qualify under three firearm enhancements. No, these all have to do with weapons. First one, it could be something other than a gun, right, for Section A? Right. So they don't really include every argument or every consideration, right? I mean, it's a little different. Well, I'm saying if, yeah, if you say that you can be held sentenced under subsection A and B, then it also holds true that since A, B, C, and D are all equal footing, then if you qualify under B, C, and D, you would get each of those firearm enhancements. If that makes sense. That's a stretch, but okay. Thank you. Continue. And I also think it's interesting that the attempted murder of a police officer is already 14 years over the minimum that the defendant would otherwise receive. So by not putting any language that says firearm enhancements apply as well, the legislature could recognize the trial court already has imposed a much greater sentence. If it's a case where the defendant was not personally armed or it was just as co-defendant, maybe you don't have to have a 15-year. You can still include the legislative intent to punish a police officer and carrying a firearm. But we didn't see that from the legislature, what their intent was, through research and the arguments and the statements made. But anyway, counsel, sum up if you would. Oh, okay. For all the reasons we cited in the brief, we think Jackson should receive a new trial because counsel was ineffective and failed to present crucial evidence. But in the event this court disagrees, this court should find that the plain language supports that the firearm enhancements do not apply and do not depart from that statute and find that it was improperly imposed. Thank you. Counsel, thank you. Morning, sir. Your name, please. Good morning, Your Honor. Assistant State's Attorney Joseph Alexander on behalf of the people of the State of Illinois. Thank you. May it please the Court. In this case, defendant argues that his attorney was ineffective for not presenting the theory that he was guilty of a lesser-included offense. Defendant's argument is based on ignoring well-established precedent and simply attacking trial counsel's trial strategy. In this case, we have in the record trial counsel explaining why he chose this strategy that he did. He also explained that he discussed this trial strategy with the defendant, and the defendant throughout trial complimented him and his co-counsel on their abilities and the way they handled the trial. But Mr. Alexander, this case, at least viewed from one perspective, seems to present almost the perfect scientific test. You've got the same two guys, same place, same time, same events. Defendant A gets one jury. Defendant B gets another jury. They hear slightly different evidence because the attorneys did not present the same evidence in each case. And one jury finds Defendant A guilty of the lesser crime, and then Jury B finds our defendant guilty of the more severe crime. And it almost seems like it's the perfect crucible of, you know, how do you, you know, was this evidence relevant and did it move the jury, so to speak? You know, we have another jury that found the co-defendant guilty of the lesser crime. That's correct, Your Honor. But Strickland, the United States Supreme Court in Strickland, foresaw this type of situation, and that's why they said we don't look at counsel's performance in hindsight. We don't compare what another attorney would have done to what the trial attorney did in this situation. That's because we have to look at the facts and circumstances known to counsel at the time. And Strickland also recognizes that trial counsel defense attorneys are in the better position to determine what the trial strategy is, which is why the U.S. Supreme Court and every court in this country has said trial strategies that are reasonable are virtually immune to challenges of ineffective assistance of counsel. And in this case, trial counsel's strategy was immune because it was reasonable. This isn't a situation where counsel didn't understand the law, he didn't investigate, he didn't know what the evidence was. This is a case of counsel looking at the evidence and making a professional determination and then talking to the defendant about that trial strategy, defendant agreeing, and counsel presenting that strategy as a zealous advocate for his client. Defendant argues that he asked for the lesser-included instruction. That doesn't negate that he had previously agreed to the trial strategy, and it doesn't negate the reasonableness of counsel's initial, the primary strategy that he argued. And in this case, I'll argue that counsel was an amazing advocate in the sense that when defendant did ask for that lesser-included instruction, counsel, in his closing argument, pointed to evidence that would support finding the guilty on that lesser-included. So in this case, this isn't a matter of counsel neglecting defendant's case or making an unreasonable decision. What's happening here is exactly what Strickland warned against, letting the defendant raise an ineffective assistance of counsel claim after agreeing to a trial strategy and that strategy not being successful. And does the record affirmatively demonstrate the defendant's agreement with the trial strategy, perhaps in the context of the Crankle hearing? It does, and in that we, during the Crankle hearing, we called the defense attorney, well, defendant called the defense attorney to talk about the, why he chose the strategy. And he pointed to the fact that there was a lot of evidence showing that defendant may have been there, but that no one saw defendant shoot, no gun was found on defendant, defendant wasn't found in the location with the gun, and counsel thought that he could argue away the parts of the testimony, parts of the evidence that could implicate the defendant, which counsel did in closing arguments. And we also had counsel say that he discussed the trial strategy with the defendant multiple times, and that, again, defendant was, he acquiesced to that strategy, and in fact, complimented counsel on the strategy. So at this point, defendant is doing exactly what Strickland prohibits, and that's after not being successful at trial, arguing that counsel was ineffective. His argument is also flawed and should be rejected because it's based on what another jury did with different evidence. Now, while admittedly the evidence, a lot of the evidence was similar, a stark contrast between defendant's case and co-defendant's case is co-defendant decided to testify, and co-defendant decided to tell his jury, made up of 12 different people, his version of the events. Defendant exercised his right not to testify, we're not commenting on that, we're not saying that that was incorrect, but his jury was not presented with the same testimony. And it was comprised of 12 different people with 12 different experiences. Even if the same evidence is presented to two different juries, it's highly possible that those juries could reach different decisions, and that's what happened in this case. It doesn't mean that counsel was ineffective. Counsel, let's talk about the cross-examination that was in the other jury hiring back, our present jury. There was information about how the police officer's clothing blended him into the neighborhood or whatever, and or he had blue or gray clothing on. Is that pretty much it? That is pretty much it. And if we look at the officer's testimony in defendant's case, he testified that he was in civilian clothing. There was testimony, I believe, on direct examination that the officer was in tactical gear, and that he was, the purpose of tactical gear was to blend into the area. However, there was also testimony that this officer was in a bulletproof vest. There was testimony that he had his service weapon with him. There was testimony that he had his star visible. There was also evidence that defendant had a prior encounter with this police officer. All of that evidence that this officer was visible and his office was known, was the reason that counsel chose the stronger strategy in this case, which was to argue that since no one saw this defendant shooting anyone, no one saw defendant with a gun, then the state couldn't prove that he was a shooter beyond a reasonable doubt. All right. And does this rise to second-pronged plain error? Counsel suggests that this is a second-pronged plain error case. It's a substantial right of cross-examination appropriate. Do you think this rises to that? This doesn't rise to the level of second-pronged plain error because when we look at second-pronged plain error, we look at whether the integrity of the judicial process was compromised. In this case, that didn't happen because we have counsel acting as a zealous advocate on behalf of his client. If we look at this record, defendant received the type of representation that is required by the Sixth Amendment. We have to remember that defendants aren't entitled to perfect representation. They're entitled to competent representation. And in this case, when we look at this record, trial counsel was more than competent in that he developed and argued and supported a reasonable trial strategy. So any mistakes that arose from that trial strategy don't rise to the level of second-pronged plain error as courts have defined it. Counsel, let me just briefly ask you about one of the stray issues here, which was the testimony of the police officers, which went on for some length about all their medals. I mean, they basically testified they got everything except the Nobel Peace Prize. And how is that relevant to this case, this crime that occurred at 112th and Stater, that neighborhood on that day? And why shouldn't we at least say it was improperly admitted and then move to the next step and decide whether it might have changed the result? When we talk about relevancy, Your Honor, we are talking about whether it helped to prove or disprove a crime. In that sense, it was not relevant. However, it was background information. This Court has seen a lot of situations where we talk to the witnesses about their jobs and the things that they've done. And in this situation, yes, these were police officers, but that doesn't change the fact that what was asked was simply background information. I also need to point out that after those questions were asked and the officers answered, that was it. There was no more discussion about the awards or accommodations that the officers received. We didn't argue that in closing arguments. We didn't try to persuade the jury that this somehow meant that the officers were more credible. If we look at what defense counsel did, he made, again, a strategic decision not to object to that because he didn't want to draw attention to it. And his decision was reasonable. And, in fact, no further attention was drawn to those questions and answers. Therefore, we can't say that the jury was based their convictions on the fact that the officers received medals and awards and accommodations. And then let me ask you the same question, I guess, Ms. Borland, which was the split of authority on the enhancement issue. We have Justice Wilson's opinion where he indicates that there is no enhancement, and we have two later decisions indicating there was. What's your thought, first of all, on the public defender's position that there was some kind of change in the statute that affected things? If I may, I'll talk about Justice Wilson's opinion because it all ties together. With all due respect to Justice Wilson, this opinion was wrongly decided because it violates the rules of statutory construction. When we are talking about statutes and how they're constructed, we are to look at the plain language. And in this case, the language was plain and unambiguous. In order to reach their decision, the Douglas Court relied on speculation as to what the legislature might have been thinking. In this case, we know what the legislature was thinking because they wrote it out in a statute. In this statute, we have that a defendant will receive an enhanced sentence based on the fact that he shot at a police officer. I'm sorry, that he attempted to murder a police officer. That's regardless of what type of weapon was used. Then we have another part of this section that says a Class X felony will be sentenced to a 15-year firearm enhancement if a gun was used. Those two sections aren't mutually exclusive. If you have one, it doesn't mean you can't have another. If a defendant shoots at a police officer, the statute is clear that he is subject to the enhanced sentence because he shot at the police officer based on the status of the victim and based on the weapon that he used. The fact that the legislature didn't later amend the statute to make it clear according to defense counsel isn't an example of the statute being ambiguous. The fact that they didn't amend it is because they thought it was clear to begin with. The cases of Smith and Torettino, I believe, have a better analysis, a more detailed analysis, an analysis that follows the rules of statutory construction, unlike Douglas, which is why those two courts decided not to follow Douglas. We urge this court to follow Smith and Torettino because of the analysis in those cases. And also because the statute is clear. If there are no further questions for the reasons stated here and those stated in our briefs, we ask that you affirm defendant's conviction. Thank you. Thank you. Final word? Words up. I do have a few points. So first, the state repeatedly notes that trial counsel had a sound reason to go for an all or nothing defense. However, throughout its brief, the state notes that the evidence was overwhelming, that Jackson was a shooter. The trial court made the same finding at the Krankel hearing. There was GSR evidence on one of his gloves. So if counsel went in, again, we don't question counsel for trying to go after a theory of innocence. But to leave Jackson's chance for acquittal hanging on evidence that the state and the trial court found overwhelming without presenting evidence to support the alternative defense or argument is what was deficient. And actually, in closing argument, counsel never once said that Jackson may not have recognized fields. He didn't point to any other, I'm sorry, that Jackson may not have recognized Officer Portis as a police officer. He made one comment. He was talking about in pursuit of his theory that Jackson wasn't a shooter. He said, by the way, when you're considering fields for shooting, it wasn't clear as day that Officer Portis was a police officer. It was made in the context of fields, and he used no evidence to support that theory. And where the state talks about how fields testified, fields did testify he did not know Officer Portis was a police officer. He also talked about how he was acting in self-defense and that he only had one gun and he didn't know why the other shell casings were there. There wasn't two guns. The jury obviously rejected a large part of his testimony because they found him guilty. So, and the trial court also noted after trial at the Kranko hearing, had Jackson called fields, it would not have made a difference because fields' testimony was so incredible. So we can't rely just on the fact that he testified to say the outcome would have been different. The only other differences are the evidence that our defense counsel failed to elicit. So that does create a reasonable probability of a different outcome. Another point is that while there were in DCA, once you start to look at Officer Portis a little more, his bulletproof vest, his star, Jackson again may not have seen those when he started shooting. I think it's really relevant that Officer Dennis, when he arrived on the scene, he only saw one person shooting. He didn't even see a second person there. He said it wasn't Jackson. It's possible Jackson could have seen the stuff as Portis was going in and out behind the police car, and then he stopped shooting and ran away. What was his intent when he first started shooting? That's what was relevant and why counsel was ineffective. And with respect to the medals, everyone agrees that this evidence is irrelevant. I think the only question is, was Jackson prejudiced? And I think there were two reasons why Jackson was prejudiced. First, while there was some physical evidence connecting him to this crime, most of the testimony was from police officers. The jury had to believe that testimony to find him guilty. So when the jury hears about all the awards they've received, how decorated they are, that decreases the chances that they would view their testimony with skeptic ability. Why would these officers lie to them? And also, while the state may not have mentioned those medals in closing argument, it did repeatedly talk about how Portis' entire job that evening was to protect the citizens of Roseland, people like the jurors. The more they highlighted Officer Portis' importance, while also talking about how Jackson was turning the streets into Baghdad, they played upon the jurors' fears. Find Tim guilty because he might create your streets. He might turn your streets into Baghdad someday. And show a guilty verdict as a sign of support for this police officer. And then the last point I would like to make is, if counsel did not want to draw attention to the awards received by the police officers, the simple way to do that was to ask for a sidebar. Maybe it wouldn't have stopped the first officer's testimony, but maybe it would have, if he got it in quick enough, but at least it would have prevented the rest of the officers from testifying. And possibly the state would have been on notice not to make arguments about the importance of Officer Portis' job during closing arguments. Thank you very much. Thank you. I want to thank you both for excellent arguments made before this court today, and you will be hearing from us. Thank you.